IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLIED DIGITAL CORPORATION, a Nevada corporation with its principal place of business in Texas, | ) ) ) ) |
| Plaintiff, | ) C.A. No. ) |
| v. | ) ) JURY TRIAL DEMANDED |
| CHARACTER TECHNOLOGIES, INC., a Delaware corporation with its principal place of business in California, | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Applied Digital Corporation, ("Plaintiff" or "Applied"), a Nevada Corporation with its principal place of business in Texas, by and through its attorneys, based on its own experience and investigation and the independent investigation of counsel and information and belief, alleges the following Complaint against Character Technologies, Inc. ("Defendant" or "Character.ai"), a Delaware corporation with its principal place of business in California, as follows:

## INTRODUCTION

1. Applied brings this Complaint to recover agreed-upon payments arising from Character.ai's breach of the payment terms of a written contract between the parties. Applied leased the use of certain computing assets to Character.ai for use in Character.ai's efforts to develop its artificial intelligence technology. When Character.ai's needs changed, and it no longer needed and largely stopped using these computing assets, Applied offered to seek replacement customers to take the assets and, *if and when successful in securing such replacement customers*, Applied would reduce Character.ai's liability on account of the revenue provided by the new customer(s). In effect, Applied offered to mitigate Character.ai's contractual liability by

-2-

attempting to lease the computing assets to someone else. With limited exception, however, Applied did not secure replacement customers; accordingly, Character.ai remains responsible for the full amount due under the contract, less a credit for the limited times when Applied succeeded in finding replacement customers.[1]

2.      In August 2024, Google entered into a strategic licensing and talent acquisition contract whereby it promised to pay Character.ai $2.7 billion. This, apparently, explained why Character.ai no longer needed Applied's computing assets. Even though it was suddenly flush with cash, Character.ai refused to pay Applied. Instead, Character.ai ignored the conditional nature of Applied's offer (which was premised upon securing new customers to take the computing assets) and asserted that Applied had waived entitlement to any remaining moneys due. There is no basis, either in law or fact, for that position. Accordingly, Applied brings this action seeking entry of a judgment of the amount due and owing, plus interest.

## PARTIES

3.      Plaintiff Applied Digital Corporation is a domestic corporation organized and existing under the laws of the State of Nevada, with its principal place of business located at 3811 Turtle Creek Blvd., Suite 2100, Dallas, Texas 75219.

4.      Defendant Character Technologies, Inc. is a domestic corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1152 700 El Camino Real, Suite 120, Menlo Park, California 94025.

---

[1] Applied located a few short-term replacement customers that paid a total of $89,850.44 for partial use of the computing assets, thus resulting in a credit due to Character.ai of that amount.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity among the parties exists, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Personal jurisdiction and venue are proper in this Court because Defendant has sufficient minimum contacts with the jurisdiction given that it is incorporated under Delaware law. As such, Defendant is considered "at home" in Delaware and subject to general jurisdiction here.

## FACTUAL ALLEGATIONS

7. Applied is a technology company that develops digital infrastructure for and provides cloud data services to companies working in artificial intelligence ("AI") and high-performance computing ("HPC"). Through a series of data centers, Applied offers AI-development customers solutions designed to meet the needs of HPC applications, including machine learning.

8. Character.ai is a technology company that developed a platform in which users can create and engage with AI characters for educational or entertainment purposes. It was founded by a former Google executive, Noam Shazeer. In 2023, Character.ai sought to secure significant computing power to support its AI systems, including the systems used to pre-train and train AI software.

9. Through its digital cloud, Applied offers a range of graphics processing unit ("GPU") computing services that are ideal for AI workloads. To do so, Applied sells access to its GPUs located in its data centers to AI developers who can then access and use their computing power. The terms of such access can involve either (a) GPUs devoted to the exclusive use of the

customer, or (b) on-demand GPU access for which the customer pays only when it actually needs and accesses the computing power.

11. On or about June 28, 2023, Applied and Character.ai executed an agreement with an attached addendum (the "Agreement") for Applied to provide Character.ai with cloud-based computing services with the computing power Character.ai needed for its AI development efforts. Applied's CEO, Wes Cummins, and the then-Character.ai CEO, Mr. Shazeer, executed the Agreement.  A copy of the Agreement is attached hereto as **Exhibit A**.

11. The Agreement provided for Character.ai's purchase of computing services from Applied, including a defined number of GPUs that would be devoted to the exclusive use of Character.ai.  Specifically, the Agreement required Applied to make available 1,024 GPUs by June 2023 ("the Phase I tranche"), and a second group of 1,024 GPUs by August 2023 ("the Phase II tranche").  The Agreement also provided Character.ai with the option to secure access to additional GPUs, if it wished to do so.  *See* Ex. A at 20.

12. The Agreement required Character.ai to pay for the GPUs through an hourly fee assessed on a 24-hour per-day, 7-day per-week basis, for the term of the Agreement.  These fees were to be invoiced and paid on a quarterly basis.  Character.ai prepaid the initial portion of these fees, which prepayment was to be credited against the initial series of invoices rendered by Applied.

13. When Character.ai secured access to the Phase I tranche, it agreed to pay usage fees of $1.99 per GPU, per hour.  Assessed on a 24-hour per-day, 7-day per-week basis, over the 24-month term, the total contract value for Phase I was $35,701,555.20.

14. On or about July 20, 2023, and in compliance with the Agreement, Character.ai issued a prepayment to Applied in the amount of $22,491,979.78, against the Phase I tranche of 1,024 GPUs.

15. Applied thereafter sent quarterly invoices to Character.ai, detailing the accumulated charges for the Phase I tranche of GPUs and applying credits arising from the prepayment.

16. Applied also proceeded to make 1,024 GPUs in Phase II available to Character.ai. On or about December 5, 2023, Applied received a further $8,073,216.00 payment from Character.ai, on account of these Phase II GPUs.

17. The Agreement provided that once the prepayments were exhausted, Character.ai would be responsible for the hourly usage fees for the Phase I and II GPUs until the end of the Agreement's term. During negotiations of a Phase II pricing addendum, Character.ai General Counsel, Dominic Perella, confirmed in an email sent to Applied Vice President Syed Raza, that "[f]or both tranches, we will stick to the status quo of prepayment drawdown, and no out-of-pocket payment, until the prepayment is exhausted. **We will then pay in full for remaining months**. As mentioned, that has been the course of conduct for the whole term of the deal and is the best reading of the contract anyway." (Emphasis added.)

18. On or about April 29, 2024, Mr. Cummins and Mr. Perella signed a second addendum to the Agreement ("Second Addendum") in which the parties updated the pricing and payment terms of the Phase II tranche. The Second Addendum specified a Phase II price of $2.25 per GPU, per hour. Assessed on a 24-hour per-day, 7-day per-week basis for the 1,024 GPUS over the remaining 16 months of the Agreement, the total Phase II contract value was $26,910,720.00. The pricing and terms of the Phase I tranche remained as delineated in the Agreement. A true and correct copy of the Second Addendum is attached hereto as **Exhibit B**.

19. Pursuant to the Second Addendum, Character.ai would continue to lease both the Phases I and II GPUs from March 2024 to August 2025. Ex. B at 1–2.

20. The Second Addendum provides that any dispute related to the Terms of Service or Addendum must be governed by the laws of the State of Delaware without giving effect to choice of law provisions or conflict of law principles. *See* Ex. B. at 2.

## Character.ai Decreases Use of the GPUs

21. In or about May 2024, Applied realized from its tracking systems that Character.ai had stopped using the GPUs. Accordingly, on or about June 3, 2024, Mr. Cummins reached out to Myle Ott, Vice President of Engineering at Character.ai, to discuss Character.ai's decreased usage.

22. During the discussion, Mr. Ott explained that Character.ai's business needs had changed and that the company was moving away from AI pre-training; thus, it did not need the GPU capacity for which it contracted. However, Mr. Ott recognized that Character.ai remained contractually obligated to pay the remaining amounts due, until the end of the Agreement's term, irrespective of whether or not Character.ai used the GPUs.

23. Mr. Cummins then offered Mr. Ott a potential solution to possibly mitigate Character.ai's future liability. Specifically, Mr. Cummins suggested that if Applied were able to find and contract with new, replacement customers willing to take the GPUs, thereby making Applied whole on the revenue attributable to those GPUs under the Agreement, Applied would release Character.ai from payment obligations for those re-leased GPUs otherwise due under the Agreement. However, Mr. Cummins made clear that this offer was contingent upon Applied locating new customer(s) to take over the GPUs allocated to Character.ai under the Agreement.

24. Mr. Cummins did ***not*** offer to simply release Character.ai from its contractual liability for the millions of dollars due under the Agreement. Applied, of course, had no financial incentive or other reason to do so. Character.ai's changed business needs formed no defense to its liability under the Agreement for payments due until the end of the Agreement's term.

25. On or about July 29, 2024, Mr. Ott and Mr. Raza of Applied attended a further conference call. During the call, Mr. Raza confirmed that Character.ai's prepayments for the GPUs would expire on September 4, 2024, after which time Character.ai would be obligated to pay for the GPUs on a quarterly basis. Mr. Ott disclosed that Character.ai's needs were ending and his company was going through significant internal changes. As became clear through later publicity, Alphabet, the parent of Google, was then in the process of acquiring Character.ai's business through a license agreement for $2.7 billion.[2] Given that transaction, Character.ai had little need for the GPUs leased under the Agreement.

26. Messrs. Ott and Raza then discussed the offer Mr. Cummins had made to reduce Character.ai's contractual liability, provided that new customers could be found to take over the GPUs. Mr. Raza made clear that in order for Applied to secure new customers to take over the GPUs, Character.ai would first need to relinquish exclusive control of those GPUs. Otherwise, of course, those GPUs could not be re-leased to other customers on an on-demand basis. To facilitate Applied's efforts to find replacement customers, Mr. Ott agreed to relinquish exclusive control of the GPUs as of September 4, 2024. The parties contemplated that the successful re-leasing of the GPUs would reduce Character.ai's remaining contractual obligations. However, it was never

---

[2] *See* Kenrick Cai, *Google hires top talent from startup Character.AI, signs licensing deal*, REUTERS (Aug. 2, 2024), https://www.reuters.com/technology/artificial-intelligence/google-hires-characterai-cofounders-licenses-its-models-information-reports-2024-08-02/.

discussed that relinquishment of exclusive use of the GPUs would waive Applied's right to further payments under the Agreement, if the GPUs could not be re-leased.

27.     Relinquishing exclusive control of the GPUs, of course, mattered little to Character.ai, because it was not using the GPUs anyway. But a lack of exclusive control did not mean that Character.ai was unable to use the GPUs. Quite to the contrary, the GPUs remained ready and available for Character.ai's use. Further, as Applied had only limited success in finding replacement customers, Character.ai for the most part enjoyed sole use of those GPUs following September 4, 2024, on a 24 hour, 7 day per-week basis.

28.     Following the July 29, 2024 conference call, Mr. Ott forwarded a proposed Third Addendum ("Proposed Third Addendum") to the Agreement to Mr. Raza for Applied's consideration. A true and correct copy of the Proposed Third Addendum is attached hereto as **Exhibit C**.

29.     The Proposed Third Addendum misconstrued the offer that Mr. Cummins had made to Character.ai. Among other terms, the Proposed Third Addendum contemplated that: (1) prepayments made already would constitute full payment to Applied; (2) Character.ai would have the right to use Phase I and Phase II GPUs until September 4, 2024; (3) Character.ai's right to use GPUs would "cease" at midnight on September 4, 2024; and (4) both parties would be financially whole and neither would have the right to recover payments from the other. This did not accurately reflect the offer made by Applied. The Proposed Third Addendum ignored the key condition precedent to any of these terms—specifically, that Applied first had to locate new customers who would assume the GPUs assigned to Character.ai, and Character.ai would remain responsible for payments due under the Agreement for any GPUs that could not be re-leased to other customers.

30. While Mr. Raza acknowledged receipt of the Proposed Third Addendum, Applied did not agree with the terms because they failed to accurately memorialize the offer. Consequently, Applied neither accepted the proposal nor executed the document. Applied did not execute the Proposed Third Amendment and the parties had no further discussions regarding this document. Applied's refusal to sign the Proposed Third Addendum was obvious and known to Character.ai when the prepayments expired in September 2024.

31. On or about September 3, 2024, Character.ai relinquished exclusive control of the GPUs. It did so to facilitate Applied's ability to secure replacement customers to use the GPUs and thereby mitigate Character.ai's contractual liability. However, Character.ai continued to have the ability access and utilize the GPUs whenever it wished to do so. Moreover, Character.ai relinquished exclusive control of the GPUs with full knowledge that Applied had not executed the Proposed Third Addendum and, therefore, the terms set forth in that draft document were unacceptable to Applied.

32. Applied's sales team diligently sought other customers to take over the Character.ai GPUs, either wholly or in part. Applied made diligent attempts to contract with other customers, but the market had shifted and demand for Character.ai's GPUs had decreased. Accordingly, and despite continuing and diligent efforts, Applied has been unable to find another customer to take over the GPUs assigned to Character.ai.

**Character.ai Refused to Pay Further Invoices**

33. At the time Character.ai relinquished exclusive control of the GPUs in September 2024, it had only $700.42 in a positive balance remaining from the prepayment amounts. Pursuant to the Agreement and the Second Addendum, after applying that $700.42 to the balance due and

payable, Character.ai owed a remaining balance of $32,047,779.84 over the remaining term of the Agreement.

34. On November 15, 2024, Applied issued Character.ai an invoice representing the quarterly payment then due of $9,508,454.40, less remaining prepayment of $700.42, leaving a balance due of $9,507,753.98.[3] A true and correct copy of the Invoice and corresponding email is attached hereto as **Exhibit D**.

35. On the same day, Carter Wilcox of Character.ai responded via email and asserted (wrongly) that a miscommunication had occurred, and that Character.ai had "completed our service with Applied Digital on September 3, 2024. . . . [T]here will be no further payments made." A true and correct copy of the email is attached hereto as **Exhibit E.**

36. In response, Mr. Raza and Mr. Wilcox attended a call during which Mr. Raza denied there was any such agreement. Mr. Wilcox also verbally confirmed Character.ai's refusal to pay any further amounts owed pursuant to the Agreement.

37. Character.ai had ample means to pay the amounts in question. As noted above, in August 2024, Character.ai closed a transaction with Alphabet, the parent company of Google, whereby it leased Character.ai's AI technology for $2.7 billion. As part of the transaction, Mr. Shazeer and other key individuals accepted employment at Google.

### Character.ai Fails to Make Contractually Owed Payments

38. Character.ai agreed to pay a total contract value of $35,701,555.20 for Phase I. Character.ai prepaid $22,491,979.78 of that amount. Character.ai failed to pay $13,210,275.84 for the Phase I GPU tranche. *See* Ex. A; Ex. D.

---

[3] The Invoice is dated November 13, 2024 but was sent via email on November 15, 2024. *See* Ex. E.

39.    Character.ai agreed to pay a total contract value of $26,910,720.00 for Phase II. Character.ai prepaid $8,073,216.00 of that amount. Character.ai failed to pay $18,837,504.00 for the Phase II GPU tranche. *See* Ex. B; Ex. D.

40.    In combination, therefore, Character.ai's outstanding balance totals $ $32,047,779.84.

41.    Character is entitled to a credit of $89,850.44 due to Applied's limited success in re-leasing the GPUs.

42.    After reducing the combined balance by $89,850.44, the total amount Character.ai owes for both tranches is $31,957,929.40.

43.    To date, Character.ai has failed to pay the remaining balance of $31,957,929.40.

44.    When presented with a demand for payment, Character.ai asserted that Applied released it from any obligation to make further payments beyond the prepayment amounts. This is false. As alleged above, Character.ai offered to mitigate Character.ai's contractual liability provided that it acquired replacement customers for the GPUs. Applied did exactly that, although it had limited success in re-leasing the GPUs to other customers. Applied did not accept the Proposed Third Addendum and that document was never executed and never placed in effect.

45.    Once Character.ai failed to make the payments required under the Agreement and Second Addendum, and further repudiated its payment obligations pursuant to the Agreement and Second Addendum, Applied declared Character.ai's breach of the Agreement and was thus relieved of its own performance obligations and entitled to pursue damages.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

46.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as though set forth fully herein.

-12-

47. Applied and Character.ai—parties of equal bargaining power who were represented by counsel—mutually entered the Agreement and Second Addendum, contracts that bestowed rights and obligations on the parties.

48. Applied complied with all applicable provisions of the Agreement and Second Addendum, as alleged in detail above.

49. Character.ai failed to fulfill its payment obligations under the terms of the Agreement and Second Addendum by not remitting $31,957,929.40 to Applied.

50. Character.ai breached the Agreement and Second Addendum by failing to pay the agreed-upon payments pursuant to the terms of the contracts.

51. As a result of Character.ai's breach, Plaintiff has sustained damages of $31,957,929.40, and any other damages for which Character.ai is liable, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Anticipatory Repudiation)

52. Plaintiff incorporates by reference the allegations in the preceding paragraphs as though set forth fully herein.

53. Character.ai refused to perform under the Agreement and Second Addendum and asserted it owed no further payments after its prepayments were exhausted.

54. Character.ai demanded new terms and attempted to unilaterally modify the terms of the Agreement and Second Addendum without written consent and/or agreement from Applied.

55. Character.ai memorialized in writing and verbally confirmed its refusal to remit payments owed totaling $31,957,929.40.

RLF1 33318816v.1

56. Character.ai's repudiation coupled with non-performance constituted a total breach and deprived Applied of the benefit of the bargain contemplated by the parties in the Agreement and Second Addendum.

57. As a result of Character.ai's breach, Plaintiff has sustained damages of $31,957,929.40, and any other damages for which Character.ai is liable, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

58. Plaintiff incorporates by reference the allegations in the preceding paragraphs as though set forth fully herein.

59. Character.ai acted unreasonably by first acknowledging it would be responsible for payments pursuant to the Agreement and Second Addendum after prepayment was exhausted, but then, mere months later, failing to and refusing to remit payments owed totaling $31,957,929.40.

60. Character.ai acted in bad faith by attempting to unilaterally modify the terms of the Agreement and Second Addendum and failing to pay the remaining balance owed.

61. Character.ai thus deprived Applied of the benefit of the bargain contemplated by the parties in the Agreement and Second Addendum.

62. As a result of Character.ai's breach, Plaintiff has sustained damages of $31,957,929.40and any other damages for which Character.ai is liable, in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment against Defendant as follows:

A.	Damages for breach of contract, anticipatory repudiation, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty pursuant to the Agreement and the Second Addendum, in an amount to be determined at trial, but which will be not less than $31,957,929.40;

B.	Pre-judgment and post-judgment interest on such monetary relief;

C.	The costs of bringing this suit, including reasonable attorneys' fees;

D.	All other relief to which Plaintiff may be entitled at law or equity.

| | |
|---|---|
| OF COUNSEL: | /s/ Kelly E. Farnan |
| | Kelly E. Farnan (#4395) |
| | Richards, Layton & Finger, PA |
| LOWENSTEIN SANDLER LLP | One Rodney Square |
| 1251 Avenue of the Americas | 920 North King Street |
| 17th Floor | Wilmington, DE 19801 |
| New York, NY 10020 | 302-651-7700 |
| | farnan@rlf.com |
| | |
| | *Attorneys for Plaintiff Applied Digital Corporation* |
| Dated: July 18, 2025 | |